792 So.2d 931 (2001)
STATE of Louisiana
v.
Denaud EGANA.
No. 01-KA-100.
Court of Appeal of Louisiana, Fifth Circuit.
July 30, 2001.
*933 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux Thomas J. Butler, Vincent Paciera, Jr., Assistant District Attorneys, Gretna, LA, Attorneys for Plaintiff/Appellee.
J. Rodney Baum, Louisiana Appellate Project, Baton Rouge, LA, Attorney for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., SOL GOTHARD, and CLARENCE E. McMANUS.
GOTHARD, J.
Defendant, Denaud Egana, appeals his conviction and sentence on a charge of possession with intent to distribute cocaine in violation of LSA-R.S. 40:967 A. For reasons that follow, we affirm.
Defendant was charged with possession with intent to distribute cocaine by bill of information on February 12, 1998. He was arraigned on July 17, 1998, and pled not guilty. Defendant filed various pretrial motions, including motions to suppress the evidence, identification, and confession. The trial court denied the motions to suppress the evidence and confession. On March 2, 1999, the court heard and denied the motion to suppress the identification and the motion to quash. On that day, defendant applied for supervisory writs from the court's ruling. State v. Egana, 99 K 239. This court denied writs.
Defendant was tried by a jury of twelve on March 2, 1999. On that day, the jury returned a verdict of guilty as charged. On March 23, 1999, defendant filed a motion for new trial in proper person, which was argued and denied on April 12, 1999. On the same day the court sentenced defendant to serve ten years at hard labor. The trial court then granted defense counsel's motion to withdraw as counsel of record.
*934 On April 21, 1999 defendant, appearing in proper person, filed a "Notice of Intention to Apply for Supervisory Writ of Certiorari." In the motion, defendant notified the trial court of his intention "to apply to the Court of Appeal, 5th Circuit, State of Louisiana, for supervisory writ of certiorari/appeal, from the denial of motion for a new trial rendered by this Court on April 12, 1999."
This court dismissed defendant's original appeal as untimely. State v. Egana, 99-1127 (La.App. 5 Cir. 2/29/00), 758 So.2d 881. Defendant filed an application for supervisory writs in the Louisiana Supreme Court, challenging this court's dismissal of his appeal. The Supreme Court granted writs. State v. Egana, 00-0636 (La.3/31/00), 758 So.2d 808. In a per curiam opinion, the Supreme Court directed this court to review defendant's filings of April, 1999, and August, 1999 to determine whether they satisfied the requirements of a timely appeal under the State's jurisprudence. State ex rel. Egana, 00-2351 (La.9/22/00), 771 So.2d 638.
On January 3, 2001, this court issued an order remanding the case to the district court for the purpose of entering an out-of-time appeal. On January 5, 2001, the district court issued an order granting defendant an out-of-time appeal, and appointing counsel to represent him. Defendant subsequently filed an appeal in this court, raising three assignments of error.

FACTS
On November 6, 1997, Jefferson Parish narcotics agent Kyle Pierce was assigned to attempt undercover drug buys in a high crime area in Avondale as part of an ongoing investigation. Agent Billy Matranga acted as Pierce's backup officer. Pierce's car was outfitted with audio and video equipment in order to record any transactions that might take place, and to allow Matranga to monitor Pierce's activities.
At about noon, Pierce approached defendant, Denaud Egana. He told defendant he needed a "twenty," a street term meaning two rocks of crack cocaine. Defendant responded that he could take Pierce to get drugs, but that he needed a "bite" himself. By this defendant meant that he wanted to keep some of the crack for his own use. Defendant had Pierce follow him to a nearby house. Pierce gave defendant $40.00 and waited in his vehicle while defendant went inside the house. Defendant returned with two rocks of crack. He gave one to Pierce and kept one. The transaction was videotaped.
Pierce met with Matranga and other backup officers at a pre-arranged location. He gave Matranga the crack[1] and the videotape. Matranga testified that defendant was not arrested at that time because an arrest would have jeopardized the ongoing investigation.
Later that afternoon, Matranga assembled a photographic lineup which included a picture of defendant. At 5:30 p.m. that day, Matranga showed the lineup to Pierce. Pierce identified defendant as the man from whom he had purchased crack five hours earlier. Pierce also identified defendant in court as the man who had sold him crack cocaine.
The videotape of the drug transaction was played for the jury at trial. It corroborates Pierce's testimony of how the transaction took place.

ANALYSIS
In brief to this court defendant assigns three errors. In the first he contends *935 that the trial court should have suppressed the photographic lineup because it was unreliable and because he was prejudiced by the State's failure to provide the lineup to him before the day of trial.
Defendant complains that the State was unable to refute his claim that the photograph of him included in the lineup was taken after the day the instant offense was committed. Defendant testified at the motion hearing that he believed the photograph was one taken on December 11, 1997, when he was arrested on a counterfeiting charge. It was defendant's assertion that the photograph of him included in the lineup was not in existence on November 6, 1997, the date the photographic lineup was shown to Pierce, and that the identification testimony was therefore not credible.
The State argued that the photograph was from an arrest made prior to the day the instant offense occurred. There is no marking on defendant's photograph to show when it was taken. However, Agent Matranga testified at the motion hearing that he obtained defendant's photograph from the Bureau of Identification (B of I) on the day of the offense.
A defendant who seeks to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d 729, 738 (1984); State v. Payne, 00-1171 (La.App. 5 Cir. 12/13/00), 777 So.2d 555, 558-559. Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). The factors to be considered in assessing reliability, as set out in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), are: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of the prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and, 5) the time between the crime and the confrontation. See also, Manson v. Brathwaite, supra. In evaluating the defendant's argument, the reviewing court may consider all pertinent evidence adduced at the trial, as well as at the hearing on the motion to suppress the identification. State v. Clennon, 98-1370 (La.App. 5 Cir. 6/30/99), 738 So.2d 161, 164. A trial court's determination of the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion. Id.
Considering the facts of the instant case in light of the factors enunciated in Manson v. Brathwaite, we do not find that defendant proved the photographic lineup was suggestive. Agent Matranga, who showed Agent Pierce the lineup, testified that he went through photographs on hand at the Sheriff's Office, and selected some whose subjects resembled defendant. Agent Pierce testified at the motion hearing that no one coerced him in any way to choose a particular photograph from the lineup, and that nothing was offered to him in exchange for making an identification. Pierce stated he was asked to look at the six photographs in the lineup and determine whether any of them was the person he had dealt with earlier. Pierce was able to make a positive identification in a matter of seconds. Matranga had Pierce sign and date photograph number 2 in the lineup, the one he had identified.
The videotape of the drug transaction, as well as Pierce's identification of defendant in court, gave added support to the photographic identification. The narcotics sale took place during daylight hours. *936 Agents Pierce and Matranga testified that the lineup was done at about 5:30 on the evening of November 6, 1997, only six hours after the drug buy took place. Defendant's appearance would have been fresh in Pierce's mind. The videotape of the transaction shows that defendant was only inches away from Agent Pierce during the transaction.
Defendant argues herein that he was prejudiced by the State's failure to provide him with the photographic lineup in response to his discovery motion. However, counsel did not argue in the trial court that the State denied him access to the lineup prior to trial. In fact, he made statements to the contrary:
Your Honor, I would indicate that I got open file discovery, and [the photographic lineup] was not in the D.A.'s file; but that's irrelevant. The notice that this picture was not my client taken on that date came to me when my client saw it today. And I'm not saying I didn't have an opportunity to look at it, or I'm complaining about that. I wouldn't have known anyway until my client saw it.
The trial judge rejected defendant's assertion that his lineup photograph was taken some time after November 6, 1997, explaining that she did not find defendant to be a credible witness. The judge apparently believed the officers' testimony. It is not the function of the Court of Appeal to assess the credibility of witnesses or to reweigh evidence. State v. Lucas, 00-258 (La.App. 5 Cir. 8/29/00), 767 So.2d 921, 926. Even if, arguendo, the photographic lineup was unreliable, the videotape of the drug transaction, bearing a date matching the officers' testimony, clearly shows the perpetrator's face. Moreover, Agent Pierce identified defendant in court as the man who sold him the crack. After viewing the videotape and hearing the State's witnesses, the jurors obviously believed defendant to be the person who sold crack cocaine to Agent Pierce. Based on the foregoing, we find no merit in this assignment of error.
In the second assignment of error, defendant asserts the trial court erred in imposing sentence without a twenty-four hour delay after the denial of the motion for new trial. By this assignment, defendant complains that the trial court erred in failing to allow the proper delay between denial of his motion for new trial and sentencing. LSA-C.Cr.P. art. 873 provides, in pertinent part:
If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in this article or pleads guilty, sentence may be imposed immediately.
On April 12, 1999, the trial court heard and denied defendant's pro se motion for new trial. Defendant was sentenced that same day. Although defendant did not expressly state that he wished to waive the twenty-four hour delay required by article 873, defense counsel told the court defendant was "ready for sentencing" following the court's ruling. Such a statement has been held to be an implied waiver of the sentencing delay. State v. Biglane, 99-111 (La.App. 5 Cir. 5/19/99), 738 So.2d 630, 639. Accordingly, we find no merit in this assignment.
In the third assignment defendant argues the court imposed an excessive sentence, and failed to adequately consider the provisions of LSA C.Cr.P. art. 894.1 by not considering the existence of mitigating circumstances and not particularizing the sentence to Denaud Egana and the facts of this case.
*937 Defendant complains that his ten-year sentence is excessive, arguing the trial court failed to utilize the provisions of LSA-C.Cr.P. art. 894.1 to particularize the sentence to the facts of the case. Defendant failed to file a timely motion to reconsider sentence under LSA-C.Cr.P. art. 881.1. Defendant also failed to make a specific oral objection at the time of sentencing. Such an omission by the defense generally precludes review of a sentence on appeal. See, State v. Ewens, 98-1096 (La.App. 5 Cir. 3/30/99), 735 So.2d 89, 96, writ denied, 99-1218 (La.10/8/99), 750 So.2d 179. Defendant is not now entitled to review of his claim of statutory excessiveness. The failure to file a motion to reconsider sentence limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Hester, 99-426 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, 103, writ denied, 99-3217 (La.4/20/00), 760 So.2d 342.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Munoz, 575 So.2d 848, 851 (La.App. 5 Cir.1991), writ denied, 577 So.2d 1009 (1991). The trial judge has wide discretion in imposing sentences within the statutory limits, and sentences will not be set aside absent manifest abuse of that broad discretion. State v. Lanclos, 419 So.2d 475, 478 (La.1982); State v. Rainey, 98-436 (La.App. 5 Cir. 11/25/98), 722 So.2d 1097, 1106, writ denied, 98-3219 (La.5/17/99), 741 So.2d 28. Three factors should be considered in reviewing a judge's sentencing discretion: 1) the nature of the crime; 2) the nature and background of the offender; and, 3) the sentence imposed for similar crimes by the same court and other courts. State v. Le, 98-1274 (La.App. 5 Cir. 6/30/99), 738 So.2d 168, 171; State v. Medious, 98-419 (La. App. 5 Cir. 11/25/98), 722 So.2d 1086, 1092, writ denied, 98-3201 (La.4/23/99), 742 So.2d 876.
The sentencing range for distribution of cocaine is five to 30 years, with a possible fine of $50,000.00. LSA-R.S. 40:967 B(4)(b). Defendant's sentence of ten years is at the lower end of that range. Moreover, the court refrained from imposing a fine. Further, defendant admitted to an extensive criminal history at the suppression hearing. He had prior arrests for counterfeiting, assault and battery, possession of stolen property, and distribution of cocaine. The videotape of the drug sale to Agent Pierce shows that defendant was not hesitant to engage in the narcotics trade.
Given the facts of this case, we do not find the sentence to be unconstitutionally excessive. See, State v. Hubbard, 30,604 (La.App. 2 Cir. 4/8/98), 711 So.2d 393; State v. Mitchell, 598 So.2d 1193 (La.App. 5 Cir.1992), writ denied, 605 So.2d 1094 (La.1992).
Additionally, we note that the sentence is illegally lenient. While the LSA-R.S. 40:967 B(4)(b) requires that the first five years of a sentence for cocaine distribution be imposed without benefit of parole, probation or suspension of sentence, the trial court failed to make such a provision. However, the State neither objected to the sentence in the trial court, nor raised the issue on appeal. This court will not amend or set aside illegally lenient sentences on its own motion. See, State v. Jolly, 00-181 (La.App. 5 Cir. 7/25/00), 768 So.2d 165, 173.
In our review of the record for errors patent pursuant to LSA C.Cr.P. art. *938 920, we also find that the trial court advised defendant at the time of sentencing that he would have three years from the time his conviction and sentence became final in which to file an application for post-conviction relief. Since that time LSA C.Cr.P. art. 930.8 has been amended to reduce the prescriptive period to two years. The amendment has been applied retroactively. State v. Boles, 99-662 (La. App. 5 Cir. 11/10/99), 750 So.2d 1059, 1062. Accordingly, the trial court is ordered to send defendant written notice of the current prescriptive period, and to file written proof in the record that defendant received said notice.
AFFIRMED WITH ORDER.
NOTES
[1] Forensic scientist Charles Krone, an expert in the field of identification of controlled dangerous substances, testified at trial that he tested the evidence in this case, and the results were positive for cocaine.