864 So.2d 811 (2003)
STATE of Louisiana
v.
Clent SMITH.
No. 03-KA-786.
Court of Appeal of Louisiana, Fifth Circuit.
December 30, 2003.
*815 Paul D. Connick, Jr., District Attorney, Juliet Clark, Terry M. Boudreaux, Bradley Burget, Assistant District Attorneys, Parish of Jefferson District Attorney's Office, Gretna, LA, for Plaintiff/Appellee.
Margaret S. Sollars, Louisiana Appellate Project, Thibodaux, LA, for Defendant/Appellant.
Clent Smith, Winnfield, LA, Defendant/In Proper Person/Appellant.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS and CLARENCE E. McMANUS.
SOL GOTHARD, Judge.
Defendant, Clent Smith, was charged with one count of theft of U.S. currency valued at over $1,000.00 from Antoun Bou-Mikael in violation of LSA-R.S. 14:67, which allegedly occurred on or about August 4, 1999, and one count of theft of U.S. currency valued at over $1,000.00 from Felix Sapp in violation of LSA-R.S. 14:67, which allegedly occurred on or about August 25, 1999. The defendant filed various pretrial motions, including a motion to suppress identification, which were denied by the trial court. Thereafter, the case was tried before a six-person jury which found defendant guilty as charged. The trial court sentenced defendant on August 20, 2002 to imprisonment at hard labor for nine years on each count to run consecutively. Defendant filed a motion for appeal that was granted by the trial court. For the reasons that follow, we affirm the defendant's convictions and sentences and we remand the matter for the trial court to notify defendant of the delays for filing for post-conviction relief pursuant to La. C.Cr.P. art. 930.8.
In August of 1999, in two separate incidents, Antoun Bou-Mikael and Felix Sapp were victims of a "pigeon drop." Detective Sean Watson of the Kenner Police Department, explained that a "pigeon drop" was a crime where a suspect approaches an elderly victim and tells that victim that he either has an inheritance or has found money, and that he needs to get rid of the money. The suspect usually asks the victim for his trust and tries to get the victim to withdraw some money from his bank account to show good faith.
Antoun Bou-Mikael testified that he was originally from Lebanon, that he had been in the United States for more than 17 years, and that he was 65 years old at the time of trial. He testified that, on the afternoon of August 4, 1999, while in the Home Depot parking lot on Veterans Boulevard in Kenner, Louisiana, defendant approached him with a piece of cardboard with an address on it and asked for directions. Mr. Bou-Mikael offered defendant a ride. As they were driving, defendant told Mr. Bou-Mikael to stop and pick up another person at a Burger King. Before they left Burger King the second person said that he had $150,000.00 that he wanted to put in the bank, but that he could not do so because he was a black person. The second person explained that the bank did not like black people, and therefore it would not open an account for him with that much money. This person showed Mr. Bou-Mikael four packs or bundles, which he stated was the money. Mr. Bou-Mikael was shown one pack, which consisted of brand new 50 and 100 dollar bills.
Mr. Bou-Mikael drove to his bank with the defendant and the other man, after *816 telling them that he had an account, that he usually withdrew and deposited money, and that he would show them how to do it. He entered his bank and withdrew $7,000.00 from his line of credit. Once he returned with the money he gave it to the defendant to hold. The defendant and the second person then left, and did not come back. Mr. Bou-Mikael then called the police from the bank.
Thereafter, Mr. Bou-Mikael identified defendant from a photographic line-up, as the person to which he gave the money. At trial, he testified that he did not give defendant permission to take his money. He explained that the $7,000.00 was a loan from his credit line, that he had to pay it back, and that it was a hardship because he could not work.
Officer Mark Russo, with the Kenner Police Department, testified that on August 4, 1999 at approximately 10:15 a.m., he was flagged down by a Home Depot worker and reported suspicious behavior on the part of defendant, who was in the Home Depot parking lot. Officer Russo approached defendant, who stated that he was getting ready to catch a flight to Texas. Defendant was very nervous and was acting suspicious. Officer Russo filled out a Field Interview Card, with the name, driver's license and clothing description. Defendant identified himself as Clent Smith, and produced a Texas driver's license. When Officer Russo learned of the scams, he turned over the Field Interview Card to the investigating officer.
On September 23, 1999, Mr. Bou-Mikael was shown a photographic line-up, and he positively identified the defendant.
Felix Sapp, who turned 78 the day after trial, testified that he worked in the real estate business and was semi-retired. On August 25, 1999, he was at a shopping center on Chateau Boulevard in Kenner when a man, later identified as defendant, stopped him. Defendant had a piece of paper with an address on it and said that he was looking for that address. Mr. Sapp offered to give defendant a ride to that address. While en route, defendant asked him to pull into the Holiday Inn, where they picked up a second man. The man had a roll of money with him, and defendant told Mr. Sapp they needed to go to a bank to deposit the money.
At the bank, defendant stayed in the car with Mr. Sapp, while the other man left for about ten minutes. When the man returned, defendant said that he was settling the estate for his deceased brother, and that he had some property out at the airport that he wanted to sell. Mr. Sapp told defendant that he was in the real estate business and interested in buying it. Defendant requested a cash down payment. Mr. Sapp stopped at his bank and withdrew $20,000.00 to pay for the lot, which he then placed in the glove compartment of his car. Mr. Sapp testified that he intended to go to his attorney's office, but that defendant suggested they stop for lunch. At the Taco Bell parking lot, the second man took Mr. Sapp's money from the glove compartment, and also took a $2,000.00 diamond ring that Mr. Sapp was wearing. After the two men left, Mr. Sapp called the police. Mr. Sapp's car was dusted for prints, but those prints were never identified.
During the course of the investigation, Mr. Sapp was shown two photographic line-ups. During the first lineup on August 27, 1999, Mr. Sapp tentatively identified Therron Victor as the second perpetrator. On August 29, 1999, Mr. Sapp positively identified defendant in the second photographic line-up.
In his first allegation of error, defendant argues that the trial court erred by not granting a continuance after new *817 evidence was learned about the whereabouts of David Bond, the person who defendant alleges committed the crimes.
La.C.Cr.P. art. 709 provides:
A motion for a continuance based upon the absence of a witness must state:
1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
3) Facts showing due diligence used in an effort to procure attendance of the witness.
In State v. Stevenson, 02-79 (La.App. 5 Cir. 4/30/02), 817 So.2d 343, 345, this Court set forth the pertinent law regarding motions to continue trial that involve securing the presence of a witness:
The trial court has great discretion in granting a recess and the denial of a motion for a recess is not grounds for reversal absent an abuse of that discretion and the showing of specific prejudice. LSA-C.Cr.P. art. 712; State v. Luna, 00-858 (La.App. 5 Cir. 11/2/00), 772 So.2d 249, 255, writ denied. State v. Kelly, 96-903 (La.App. 5 Cir. 11/12/97), 704 So.2d 800, 807-808, writ denied, 97-3104 (La.4/9/98), 717 So.2d 1142. In order to show prejudicial error sufficient to warrant reversal, the defendant must show that the testimony the witness would have given would have been favorable to the defense and would indicate the possibility of a different result. State v. Luna, supra at 256.
The requirements of LSA-C.Cr.P. art. 709 are strictly enforced. State v. Gibson, 572 So.2d 666, 669 (La.App. 5 Cir. 1990). In State v. Meyers, 95-750 (La. App. 5 Cir. 11/26/96), 683 So.2d 1378, 1388-1389, writ denied, 97-0234 (La.6/20/97), 695 So.2d 1350, this Court found no abuse of the trial court's discretion in denying defendant's motion for a continuance on the basis of absent witnesses, whose testimony the defense claimed was exculpatory, where defendant failed to meet two of the three requirements of LSA-C.Cr.P. art. 709.
On appeal, defendant argues that the trial court erred by not granting his motion to continue trial. However, it appears that he is actually arguing that the trial court erred by not granting his motion for a recess on the day of trial, since he actually sought a recess until the following morning in order to secure the presence of a witness.
Our review of the record shows that defendant failed to comply with the requirements of LSA-C.Cr.P. art. 709. He failed to provide facts to which the absent witness was expected to testify. He failed to state facts and circumstances showing the probability that the witness would be available at the time to which the trial was deferred. In fact, defendant had not even located the witness to determine whether he was the correct Mr. Bond at the time the continuance was requested. Finally, defendant failed to use due diligence in an effort to procure the attendance of the witness. Defense counsel knew approximately seven months prior to trial that defendant alleged that Mr. Bond committed the crime and that he was in the Bear County Jail in San Antonio, Texas. There was plenty of time for defendant and his counsel to investigate the matter, locate Mr. Bond, compare his fingerprints to those found in the victim's car, and subpoena him for trial. Further, defendant failed to show that he was prejudiced by the failure of Mr. Bond to testify.
*818 Additionally, the case was continued numerous times by defense counsel, the State, and the court. In fact, the case was continued eleven times at the request of defense counsel.
We find that the trial court did not abuse its discretion in denying defendant's motion for a recess.
In his second allegation of error, and in his fourth pro se allegation, defendant argues that the trial court erred in denying the motion to suppress the identifications. He claims that the photographic lineups were suggestive and that the identifications were unreliable.
A defendant who seeks to suppress an identification must prove both that the identification itself was suggestive and that there was a likelihood of misidentification as a result of the identification procedure. State v. Prudholm, 446 So.2d 729, 738 (La.1984); State v. Payne, 00-1171 (La. App. 5 Cir. 12/13/00), 777 So.2d 555, 558-559, writ denied, 01-118 (La.11/21/01), 802 So.2d 626.
Fairness is the standard of review for identification procedures, and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977).
Even if the identification could be considered suggestive, it is the likelihood of misidentification which violates due process, not merely the suggestive identification procedure. State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, 932, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000).
A photographic lineup is considered suggestive if the photographs display the defendant in such a manner that the witness' attention is unduly focused on the defendant. A lineup is also suggestive if there is not a sufficient resemblance of characteristics and features of the persons in the lineup. State v. Biglane, 99-111 (La.App. 5 Cir. 5/19/99), 738 So.2d 630, 634.
In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), the United States Supreme Court set forth five factors to consider in determining if an identification is reliable: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of the prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and, 5) the time between the crime and the confrontation. A trial court's determination of the admissibility of an identification should be accorded great weight and will not be disturbed on appeal unless the evidence reveals an abuse of discretion. Id.
In evaluating a challenge to an identification procedure, courts must consider the totality of the circumstances to determine whether an identification presents a substantial likelihood of misidentification. Manson v. Brathwaite, 432 U.S. at 113, 117, 97 S.Ct. at 2252, 2254; State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 69, writ denied, 98-0264 (La.6/19/98), 719 So.2d 481. Finally, when determining whether the ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence adduced at the hearing on the motion to suppress but may also consider pertinent evidence given at the trial. State v. Higgins, 01-368 (La.App. 5 Cir. 10/17/01), 800 So.2d 918, 921, writ denied, 01-3267 (La. 11/1/01), 828 So.2d 565, cert. denied, ___ U.S. ___, 123 S.Ct. 2082, 155 L.Ed.2d 1070 (2003), citing State v. Burkhalter, 428 So.2d 449, 455 (La.1983) and *819 State v. Byes, 94-611 (La.App. 5 Cir. 12/28/94), 648 So.2d 1073, 1074.
At the motion to suppress, Felix Sapp testified that Detective Sean Watson showed him photographic lineups twice. He was unable to identify anyone in the first lineup; however, when he was shown the second lineup, approximately two weeks later, he identified defendant. Detective Watson did not force or threaten or coerce him into identifying anyone.
Detective Sean Watson testified that he developed a suspect in the case, Clent Smith. Detective Watson further testified that he met with Mr. Sapp twice to show him photographic lineups. In the first photographic lineup, Mr. Sapp identified Therron Victor and that Mr. Sapp was not positive in his identification. Defendant was identified in the second photographic lineup. Defendant's photograph was not in the first lineup.
Detective Watson testified at trial that the photographic lineups each contained six photographs of individuals of the same approximate age, with the same hair style, and of the same race. A review of the photographic lineups shown to Mr. Sapp, indicate that all of the photographs in both lineups are of black men of approximately the same age, who have short haircuts and facial hair and similarly shaped noses and lips.
Additionally, Detective Watson testified that he did not tell Mr. Sapp who to pick out, nor did he force Mr. Sapp or promise Mr. Sapp anything to pick out defendant's photograph. Mr. Sapp testified at the suppression hearing that Detective Watson did not force, threaten, or coerce him into identifying anyone.
With respect to the identification by Mr. Bou-Mikael, it is initially noted that Mr. Bou-Mikael had to testify through an interpreter at the suppression hearing and at the trial. At the suppression hearing, Mr. Bou-Mikael testified that he met with a police officer and that the officer showed him photographs of two or three people. Mr. Bou-Mikael explained that he was able to identify someone in those photographs, and that the police officer did not force him or threaten him to pick out someone. He testified that he was ninety percent sure the person he identified, the defendant, was one of the persons who stole money from him on that day. On cross-examination, Mr. Bou-Mikael testified that he did not recall that the person who stole money from him had gold teeth.
At trial, the State showed Mr. Bou-Mikael a photographic lineup marked for identification as State's Exhibit 1 and asked Mr. Bou-Mikael if he had ever seen those photographs before. Mr. Bou-Mikael pointed to photograph number 4 of defendant and testified that he recognized that photograph. He subsequently turned the lineup over and identified his signature on the back of the photograph. A review of State's Exhibit 1 shows six photographs of black men of approximately the same age, who have short haircuts and facial hair and similarly shaped noses and lips.
The defendant argues that Mr. Bou-Mikael testified that he identified the picture of the man wearing the hat. A review of Mr. Bou-Mikael's testimony indicates that Mr. Bou-Mikael did not understand the questions clearly, but that he was attempting to convey to the court that he chose the photograph of the man who was wearing a hat at the time he committed the crime. Additionally, a review of the photographs contained in State's Exhibit 1 show that none of the men are wearing hats.
We find that the identifications were not suggestive, that the identifications were reliable, and that the trial court did not err *820 in denying the motion to suppress identifications.
In his third allegation of error, defendant argues that the trial court erred by including a jury instruction on flight because it was not relevant to the facts or supported by the evidence. Defendant argues alternatively, that if this Court finds sufficient evidence of flight in the record, then the trial court erred by telling the jury what they had to infer from the evidence regarding flight.
The State responds that the evidence indicated that defendant fled the jurisdiction after the crimes were committed and, therefore, that the trial judge did not err by including the instruction on flight. Alternatively, the State contends that even if the charge was erroneously given, the error was harmless.
The jury charge at issue is as follows:
If you find that the defendant fled immediately after a crime was committed, or after he was accused of a crime, the flight alone is not sufficient to prove that the defendant is guilty. However, flight may be considered along with all other evidence. You must decide whether such flight was due to consciousness of guilt or to other reasons unrelated to guilt.
In State v. Eskano, 00-101 (La.App. 5 Cir. 1/30/01), 779 So.2d 148, 155-156, this Court set forth the pertinent law regarding jury instructions on flight:
If there is testimony of flight after the crime was committed and the jury charge regarding flight is brief when considered in connection with the remainder of the charge, the instruction is neither erroneous nor prejudicial. State v. Bell, 97-896 (La.App. 5 Cir. 10/14/98), 721 So.2d 38, 41 (citing State v. Walker, 93-632 (La.App. 5 Cir. 1/31/95), 650 So.2d 363, writ denied, 95-0545 (La.6/23/95), 656 So.2d 1013).
An erroneous jury instruction is subject to harmless error review. State v. Jynes, 94-745 (La.App. 5 Cir. 3/1/95), 652 So.2d 91, 98. The appropriate standard for determining harmless error is "`not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in the instant trial was surely unattributable to the error.'" State v. James, 95-566 (La.App. 5 Cir. 11/28/95), 665 So.2d 581, 584 (citing Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993)).
In the instant case, we find that there was sufficient testimony of defendant's flight, after the crime was committed, to warrant an instruction on flight. The crimes in this case occurred on August 4 and 25, 1999. On August 4, 1999, Officer Mark Russo interviewed defendant and filled out a Field Interview Card on him in the parking lot of Home Depot because defendant was acting suspiciously. At that time, defendant said that he was getting ready to catch a flight and leave for Texas. Defendant gave Officer Russo his Texas driver's license.
Detective Watson testified that, on October 21, 1999, he sought a search warrant for defendant's arrest. He sent the arrest warrant to the screening division of the Jefferson Parish District Attorney's Office, to be sent to the FBI for a UFAP (unlawful flight to avoid prosecution) warrant, because the officers believed that defendant was in San Antonio, Texas since that was the address he gave when Officer Russo interviewed him. Detective Watson testified that it was not uncommon for people who committed pigeon drop scams to flee back to their home jurisdiction following the commission of the crimes. Detective *821 Watson also testified that defendant was released before they could bring him back to Louisiana, that defendant was re-arrested in San Antonio, Texas on April 29, 2001, and that defendant had to be extradited to Louisiana because he would not come back willingly.
Defendant further argues that, even if this court finds sufficient evidence of flight, the trial court's instruction defining flight invaded the province of the jury in that, the court instructed the jury that they must make some inference from any evidence of flight that might be introduced. In State v. McIntyre, 381 So.2d 408, 411-412 (La.1980), cert. denied, 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980), the Louisiana Supreme Court rejected a similar claim where the defendant alleged that the trial court instructed the jury in reference to evidence of flight that: "You must decide whether such flight was due to consciousness of guilt or for other reasons unrelated to whether or not he was guilty." The Supreme Court found nothing improper in the trial court's remarks and stated in pertinent part:
We find nothing improper in the court's purported remarks. The court was merely reminding the jurors of their duty to review all of the evidence presented and to draw therefrom whatever inference that they thought proper. The court did not force the jurors to choose between two inferences but merely stated that a jury must either consider that evidence introduced is probative of the defendant's guilt or that it is not.
We find that the trial court did not err by giving the instruction on flight.
In his fourth assignment of error, defendant argues that the trial court erred by not putting in the record reasons for its excessive sentence as mandated by LSA-C.Cr.P. art. 894.1. He contends that his behavior was not that egregious so as to justify near maximum sentences, and then to impose them consecutively. He also claims that the State did not offer proof of his previous convictions.
Defendant failed to file a timely motion to reconsider sentence under LSA-C.Cr.P. art. 881.1. Defendant also failed to make an oral objection at the time of sentencing. Such an omission by the defense precludes review of a sentence on appeal. See, State v. Ewens, 98-1096 (La. App. 5 Cir. 3/30/99), 735 So.2d 89, 96, writ denied, 99-1218 (La.10/8/99), 750 So.2d 179. Defendant is not now entitled to review of his claim of statutory excessiveness. State v. Egana, 01-100 (La.App. 5 Cir. 7/30/01), 792 So.2d 931, 937, writ denied, 01-2609 (La.6/21/02), 818 So.2d 793. Regarding the issue of consecutive sentences, this Court has recognized that in order to preserve the issue for appellate review defendant must assert the ground in the motion to reconsider sentence. State v. Calvin, 00-1505 (La.App. 5 Cir. 2/28/01), 781 So.2d 827, 833, writ denied, 01-1112 (La.1/4/02), 805 So.2d 1182. Accordingly, defendant's failure to file a motion to reconsider sentence limits him to a bare review of the sentence for constitutional excessiveness. State v. Hester, 99-426 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, 103, writ denied, 99-3217 (La.4/20/00), 760 So.2d 342.
The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La.1992); State v. Munoz, 575 So.2d 848, 851 (La.App. 5 Cir.1991), writ denied, 577 So.2d 1009 (La.1991). The trial judge *822 has wide discretion in imposing sentences within the statutory limits, and sentences will not be set aside absent manifest abuse of that broad discretion. State v. Lanclos, 419 So.2d 475, 478 (La.1982); State v. Rainey, 98-436 (La.App. 5 Cir. 11/25/98), 722 So.2d 1097, 1106, writ denied, 98-3219 (La.5/17/99), 741 So.2d 28. Three factors should be considered in reviewing a judge's sentencing discretion: 1) the nature of the crime; 2) the nature and background of the offender; and, 3) the sentence imposed for similar crimes by the same court and other courts. State v. Le, 98-1274 (La.App. 5 Cir. 6/30/99), 738 So.2d 168, 171, writ denied, 00-2174 (La.4/12/01), 789 So.2d 587; State v. Medious, 98-419 (La.App. 5 Cir. 11/25/98), 722 So.2d 1086, 1092, writ denied, 98-3201 (La.4/23/99), 742 So.2d 876.
Defendant was charged with and convicted of two counts of theft in violation of LSA-R.S. 14:67. Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both. LSA-R.S. 14:67 B(1).
We find that the sentences were not constitutionally excessive. Defendant induced Mr. Sapp and Mr. Bou-Mikael, two elderly and vulnerable men, to withdraw a total of $27,000.00 from their banks and give it to him. He also stole Mr. Sapp's diamond ring. Defendant fled the jurisdiction after committing the two crimes. The trial judge did not order restitution and, therefore, it appears that the victims will not be getting their money back. Additionally, defendant had a lengthy criminal history involving prior convictions for similar conduct.
Defendant also argues that the State did not offer proof of his prior convictions. In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Jackson, 612 So.2d 993 (La.App. 2 Cir.1993). The sources of information relied upon by the sentencing court may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrests, as well as conviction records. State v. Myles, 94-0217 (La.6/3/94), 638 So.2d 218. These matters may be considered even in the absence of proof the defendant committed the other offenses. State v. Jones, 31,569 (La.App. 2 Cir.12/9/98), 724 So.2d 810; State v. Anderson, 30,060 (La.App. 2 Cir. 10/29/97), 702 So.2d 40, 42.
In the instant case, the record reflects that the prosecutor enumerated defendant's prior convictions for the trial judge. He did not introduce into evidence any exhibits regarding those convictions. Therefore, the sources of information the prosecutor relied on are unknown. Defense counsel did not object after the prosecutor listed defendant's prior convictions. In light of the above-cited jurisprudence, we find that the trial court did not err in considering those prior convictions even in the absence of proof that defendant committed those crimes.
In his first pro se assignment of error, defendant argues that the trial court erred by ignoring defendant's motion for a speedy trial. Because defendant has already been tried and convicted, his allegation of the violation of the statutory right to a speedy trial raised after trial is moot, since the only remedy for violation of the statutory right to speedy trial is a release from the defendant's bail obligation. See, State v. Price, 96-680 (La.App. 5 Cir. 2/25/97), 690 So.2d 191, 197.
*823 In his second pro se assignment of error, defendant contends that the trial court erred because his trial was not held within two years after the bill of information was filed as mandated by La.C.Cr.P. art. 578.
A motion to quash is the proper procedural vehicle for challenging an untimely commencement of trial. LSA-C.Cr.P. art. 532(7); State v. Rome, 93-1221 (La.1/14/94), 630 So.2d 1284, 1286. Defendant failed to file a motion to quash and, therefore, the issue is waived. Further, there is no ruling for this Court to review.
In his third pro se allegation of error, defendant argues that he was denied effective assistance of counsel. Defendant attached numerous documents to his pro se brief, these documents are not contained in the record. It is well-settled that an appellate court is precluded from considering evidence which is not part of the record. State v. Pertuit, 95-935 (La.App. 5 Cir. 3/13/96), 673 So.2d 1055, 1057.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, Section 13 of the Louisiana Constitution of 1974. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient, and (2) the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075, writ denied, 94-1361 (La.11/4/94), 644 So.2d 1055. The error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or "a trial whose result is reliable." Strickland v. Washington, 466 U.S. at 687, 104 S.Ct. at 2064; State v. Serio, 94-131 (La. App. 5 Cir. 6/30/94), 641 So.2d 604, 607, writ denied, 94-2025 (La.12/16/94), 648 So.2d 388. In order to show prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the outcome of the trial would have been different. Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068; State v. Soler, 636 So.2d at 1075.
A claim of ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief rather than direct appeal, so as to afford the parties an adequate record for review. State v. McIntyre, 97-876 (La.App. 5 Cir. 1/27/98), 708 So.2d 1071, 1075, writ denied, 98-1032 (La.9/18/98), 724 So.2d 753. Only when the record contains sufficient evidence to decide the issue and the issue is properly raised by assignment of error on appeal, may it be addressed in the interest of judicial economy. State v. Peart, 621 So.2d 780, 787 (La.1993); State v. McIntyre, 708 So.2d at 1075. In this case, the appellate record does not contain sufficient evidence for this Court to consider defendant's claim of ineffective assistance of counsel. Accordingly, we decline to address this allegation of error.
We have reviewed the record for errors patent, according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990), and find that the transcript does not reflect that the trial judge adequately advised defendant of the two-year prescriptive period for seeking post-conviction relief pursuant to La. C.Cr.P. art. 930.8. Accordingly, we remand this case and order the trial judge to send written notice to the defendant of the prescriptive period, along with a notice of when the period begins to run, within ten days of the rendering of this opinion, and then to file written proof in the record that the defendant received this notice. State v. Esteen, 01-879 (La.App. 5 Cir. 5/15/02), *824 821 So.2d 60, 78, writ denied, 02-1540 (La.12/13/02), 831 So.2d 983.
For the above discussed reasons, the defendant's convictions and sentences are affirmed, and the case is remanded for the trial court to notify the defendant of the two year prescriptive period for seeking post conviction relief as ordered above.
CONVICTIONS AND SENTENCES AFFIRMED; CASE REMANDED.