923 So.2d 803 (2006)
STATE of Louisiana
v.
Yul SINGLETON.
No. 05-KA-634.
Court of Appeal of Louisiana, Fifth Circuit.
February 14, 2006.
*805 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Vincent Paciera, Jr., Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, Louisiana, for Defendant/Appellant.
Yul Singleton, Cottonport, Louisiana, Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.
The defendant, Yul Singleton, was convicted of armed robbery, a violation of LSA-R.S. 14:64, and was sentenced to thirty-five years at hard labor without benefit of probation, parole, or suspension of sentence. Defendant now appeals from his conviction and sentence.
*806 The following facts were adduced at trial. Kedra Roussell testified that, on August 20, 2002, she was returning to her grandmother's house when she noticed a car that "scurried around the neighborhood," then "into the curve where [her] grandmother stayed." It was a couple of minutes before anyone got out of the car. When one of the occupants got out of the car, he tried to have a conversation with her. After she told him that she was not giving out any information, he pulled out a silver gun, placed it to her ear, and "cocked it back". He asked for her earrings. She tried to comply, but could only take one earring out, because she was so nervous. The assailant yanked the second one out of her ear. When the defendant started to walk back to the car, she only took a couple of steps trying not to walk, but then ran to the bushes. After the defendant looked back at her, she waited a few moments until she thought everything was clear. Roussell testified that she was so afraid that it felt "like everything stopped, the cars passing, just everything." Roussell testified that it did not even take a second for her to recognize the person depicted in the second photograph, in the photographic line-up, as the person who robbed her. In addition, she identified the defendant, at trial, as the person who robbed her while armed with a gun.
Co-defendant Lavelle Norman testified that he pled guilty to accessory after the fact in the robbery of Roussell. He testified that on August 20, 2002, he was driving a car owned by Stephanie Carter in which the defendant was a passenger. Between six and eight o'clock, they saw a female at the intersection of Hector and Wright streets, in Gretna, LA. He testified that he and the defendant passed the female up once as they passed through the neighborhood, and then stopped near her. He identified the defendant, in the courtroom and by name, as the passenger in the car he was driving, and as the person who got out of the car and approached the female. Norman testified that a little while after the defendant walked toward the female, he came back, got into the car, and they drove away. Later, the defendant told him "[t]hat he robbed the little female of some earrings." In addition, Norman identified the defendant in the photographic line-up presented to him by the police as the person he was with on the evening of August 20, 2002. Norman testified that he knew the defendant two or three months before the incident. Norman admitted that he did not implicate the defendant as the perpetrator of the armed robbery in his statement to the police, because he was scared.
Robert Gash, who was in prison during trial on a parole violation, testified for the State under court order. He testified that he knew the defendant, and that the defendant was a passenger in a blue Escort with him on the evening of August 20, 2002.
In this appeal, defendant's counsel filed a brief in which it is alleged that the sentence imposed is illegal and excessive. Defendant also filed a pro se brief, alleging four allegations of error.
The defendant did not file a motion to reconsider sentence before the trial court. The defendant argues for the first time on appeal that the thirty-five year sentence he received was constitutionally excessive considering the circumstances of this crime and his non-violent record that included felony convictions for possession of controlled dangerous substances.
The State argues that the defendant's thirty-five year sentence is within statutory guidelines and does not constitute excessive punishment.
The Eighth Amendment to the United States Constitution and the Louisiana *807 Constitution Article I, § 20 prohibits the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. State v. Wickem, 99-1261 (La. App. 5 Cir.4/12/00), 759 So.2d 961, 968, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839; State v. Robinson, 04-1417 (La. App. 5 Cir.5/31/05), 905 So.2d 405, 407-408. The trial court should consider the defendant's personal history: age, family ties, marital status, health, employment record, as well as his prior criminal record, seriousness of offense and the likelihood of rehabilitation in determining an appropriate sentence. State v. Jones, 398 So.2d 1049 (La.1981).
A trial court is afforded great discretion in determining sentences and sentences within the statutory limit will not be set aside as excessive absent clear abuse of that broad discretion. LSA-C.Cr.P. art. 881.4(D). State v. Adair, 04-120, p. 3 (La. App. 5 Cir.5/26/04), 875 So.2d 972, 974-975; State v. Riche, 608 So.2d 639, 640 (La.App. 5 Cir.1992), writ denied, 613 So.2d 972 (La.1993). See also, State v. Bartley, 00-1370 (La.App. 5 Cir.2/14/01), 782 So.2d 29, 34, writ denied, 01-0717 (La.2/22/02), 809 So.2d 981.
In reviewing a sentence for excessiveness, the appellate court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice. State v. Lobato, 603 So.2d 739, 751 (La.1992), State v. Robinson, 905 So.2d at 407-408. An appellate court should consider three factors in reviewing a trial court's sentencing discretion: 1) the nature of the crime, 2) the nature and background of the offender, and, 3) the sentence imposed for similar crimes by the same court and other courts. State v. Smith, 03-786 (La.App. 5 Cir.12/30/03), 864 So.2d 811, 822, writ denied, 04-380 and 04-419 (La.6/25/04), 876 So.2d 830.
LSA-C.Cr.P. art. 881.1(E) provides that "[f]ailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review." State v. Adair, 04-120 (La.App. 5 Cir.5/26/04), 875 So.2d 972, 974-975. This Court has reviewed a defendant's constitutional challenge of a sentence, in the absence of a motion to reconsider sentence. Id. However, the failure to file a motion to reconsider sentence or to state specific grounds upon which the motion is based, limits the defendant to a bare review of the sentence for constitutional excessiveness. Id.
In the present case, the defendant did not file a motion for the trial court to reconsider his thirty-five year sentence for armed robbery; therefore, this Court is limited to a bare review of his sentence for constitutional excessiveness. The sentencing range for armed robbery is imprisonment at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. Therefore, the defendant received a sentence that was below the mid-range. Before sentencing the defendant, the trial court stated for the record that it listened to the evidence presented and "factually what happened" before imposing the sentence. The trial court evidently took into consideration before imposing his sentence that the defendant pulled the victim's earring from her ear, and placed the victim in fear of her life and severe emotional distress by placing *808 a gun to her ear and cocking it back. Given the serious nature of this offense, we find that the trial court did not abuse its discretion in imposing a sentence below the mid-range.
In defendant's first pro se assignment of error, he argues that the trial court erred in denying the motion to suppress the identification procedure. He claims that the admission of Roussell's photographic lineup and vehicle identification, at his trial, deprived him of due process guaranteed by the Fourteenth Amendment. The defendant suggests that Roussell misidentified him, because she did not provide a description of him that included the following attributes: skin complexion, body build, and facial hair. He contends that the fact that Roussell's description lacks of these attributes, especially given her close proximity to the assailant, shows there exists the likelihood of misidentification. In addition, the defendant refers this Court to specific portions of Roussell's testimony, during the December 9, 2002 suppression hearing and his trial that he contends are proof of perjury. The defendant claims that his counsel was ineffective, because he failed to pursue and object to the perjury.
At the suppression hearing, Roussell testified that she described the man, who robbed her to the officer, before the officer asked her to make an identification from the photographic lineup. The officer told her that he developed a couple of suspects, but did not indicate whether they were in the lineup. Initially, Roussell indicated that she also picked the defendant out of a group of individual pictures, but she later clarified that the individual pictures shown to her were only of cars.
Detective John Carroll of the Jefferson Parish Sheriff's Office testified that he only showed Roussell photographic lineups of people. He testified that he never showed her individual pictures of people. Detective Carroll did, however, show her individual polaroids of cars after the photographic lineups.
In challenging an identification procedure, the defendant must prove to the court that it was suggestive and that there was a substantial likelihood of misidentification. State v. Raines, 00-1941 (La.App. 5 Cir.5/30/01), 788 So.2d 635, 639; writ denied, 01-1906 (La.5/10/02), 815 So.2d 833. Even if the identification procedure is found to be suggestive, this alone does not violate due process. Rather, it is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness. Id.
The standard of review for identification procedures is fairness, and the linchpin in determining the admissibility of identification testimony is reliability. Id.; Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). The factors to be considered in assessing reliability are: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Any corrupting effect of a suggested identification procedure is to be weighed against these factors. Id. A court must consider the totality of the circumstances to determine whether an identification presents a substantial likelihood of misidentification. Id. An appellate court is not limited to the evidence adduced at the hearing on the motion; instead, it may also consider pertinent evidence given at trial, in determining whether the ruling on a defendant's motion to suppress is correct. State v. Raines, 788 So.2d at 639-640. A trial court's decision to deny a motion to *809 suppress is afforded great weight, and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Raines, 788 So.2d at 640.
The defendant, in his brief, refers this Court to portions of Roussell's testimony in the December 9, 2002 suppression hearing, and at the trial, that he contended were proof of perjury and support his claim that there was a likelihood of misidentification. We have considered these portions of testimony and find that the defendant has not proven that the identification was suggestive and that there was a substantial likelihood of misidentification. Roussell appears to have been initially confused about what a photographic lineup is and when the photographic lineup was presented to her, but when shown the lineup and her signature she remembered. Roussell identified the defendant, at trial, as the person who robbed her, and consistently identified the picture of the defendant as the person who robbed her. Roussell also testified that the car used in the robbery was a blue Escort, and admitted that if she previously said it was green it was a mistake, because she knew it was blue. In addition, Roussell had ample opportunity to view the defendant at the time of the crime, especially when he looked back at her. Roussell testified that about her degree of attention during the robbery, she testified that she was so afraid that it felt "like everything stopped, the cars passing, just everything." She testified that she gave a description of her assailant at the time of the crime to the police. In addition, according to the date on the photographic lineup, Roussell identified the defendant nine days after the robbery. Roussell testified that it did not even take a second for her to recognize the person depicted in the second photograph, in the photographic line-up, as the person who robbed her. In addition, she identified the defendant, at trial, has the person who robbed her while armed with a gun. Compare State v. Deruise, 98-0541 (La.4/3/01), 802 So.2d 1224, 1238-1239, cert. denied, 534 U.S. 926, 122 S.Ct. 283, 151 L.Ed.2d 208 (2001), in which the Louisiana Supreme Court found that the defendant's claims regarding the State having elicited false testimony with respect to a witness's statement and a photographic lineup were without merit, therefore, there was no evidence of perjury.
Accordingly, we find no merit to this allegation of error.
In his second pro se allegation of error, the defendant argues that Roussell and co-defendant Norman committed perjury in their police statements, and at the suppression hearing and trial, and that the State failed to correct their continued perjury, which he claims it was required to do, citing Napue v. People of State of Ill., 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959). The trial court did not rule on the defendant's allegations of perjury involving Roussell and co-defendant Norman, because they are raised for the first time on appeal.
In State v. Styles, 96-897, p. 6 (La.App. 5 Cir.3/25/97), 692 So.2d 1222, 1227-1228, writ denied, 97-1069 (La.10/13/97), 703 So.2d 609, this Court held that when a defendant fails to lodge a contemporaneous objection to a witness' testimony or request an admonition or a mistrial, the defendant waives his right to assert this error on appeal. The court in Styles found that:
LSA-C.Cr.P. art. 841(A) provides, in part, that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." The purpose behind the contemporaneous objection rule under LSA-C.Cr.P. art. 841(A) is to put the trial judge on notice of an alleged irregularity *810 so that he may cure the problem and to prevent the defendant from gambling for a favorable verdict and then resorting to appeal on errors that might easily have been corrected by an objection.
In the instant case, as in Styles, since the defendant failed to object to the alleged testimony as perjury, therefore, he has waived his right to assert this error on appeal.
In his third pro se allegation of error, the defendant argues that he was denied due process and a fair trial, because the State failed to introduce co-defendant Norman's police statement and suppressed an agreement with Norman to provide him with a lighter sentence, which the defendant claims is a Brady violation. The defendant claims that Norman's police statement could have been used to impeach him, since in his statement he claimed to know nothing about the robbery. No objection to the admission of co-defendant Norman's statement was made during the trial court proceedings, and therefore any alleged error in the introduction of co-defendant Norman's statement into evidence has not been preserved for appellate review. Styles, supra.
Furthermore, we note that the transcript of co-defendant Norman's police statement was introduced into evidence by the State at the December 5, 2002 suppression hearing. Defense counsel did not object to its introduction. In fact, defense counsel used the statement, at trial, to impeach Norman claiming that nowhere in his statement did he say that the defendant committed the robbery.
In addition, Norman testified, at trial, that he pled guilty to accessory after the fact in the robbery of Roussell. He is currently in prison pursuant to that plea. Therefore, the State did not suppress co-defendant Norman's plea.
In his fourth pro se allegation of error, the defendant argues that his trial counsel was ineffective for failing to give a meaningful cross-examination of the victim, Roussell, and that such cross-examination would have shown that she committed perjury between the suppression hearing and trial. The defendant claims that her identification was tainted by unconstitutional suggestiveness and was continued perjury. In addition, the defendant argues that his counsel was ineffective in not objecting to the State's failure to disclose co-defendant Norman's prior statement, a Brady violation, that would have impeached his perjured trial testimony.
A defendant is entitled to effective assistance of counsel under the United States Constitution, Sixth Amendment and the Louisiana Constitution of 1974, article I, § 13. State v. Addison, 00-1730 (La. App. 5 Cir.5/16/01), 788 So.2d 608, 615, writ denied, 01-1660 (La.4/26/02), 814 So.2d 549. Courts apply a two-pronged test in assessing a claim of ineffective assistance of counsel. A defendant must show that his attorney's performance was deficient and that the deficiency prejudiced him. Id., Strickland v. Washington, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). An error is prejudicial if it was so serious that it deprived the defendant of a fair trial, or "a trial whose result is reliable." State v. Addison, 788 So.2d at 615; Strickland, 466 U.S. at 686, 104 S.Ct. at 2064.
In order to show prejudice, a defendant must demonstrate that the outcome of the trial would have been different, but for counsel's unprofessional conduct. State v. Addison, 788 So.2d at 615; Strickland, 466 U.S. at 693, 104 S.Ct. at 2068. Effective assistance of counsel does not mean errorless counsel, or counsel who may be judged ineffective on mere hindsight. *811 State ex rel. Graffagnino v. King, 436 So.2d 559, 564 (La.1983). Any inquiry into the effectiveness of counsel must be specific to the facts of the case, because there is no precise definition of reasonably effective assistance of counsel. State v. Addison, 788 So.2d at 615; State v. Peart, 621 So.2d 780, 787 (La.1993). An alleged error that falls within the ambit of trial strategy does not establish ineffective assistance of counsel, because "opinions may differ on the advisability of such a tactic." Therefore, "hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987), citing Strickland v. Washington, supra. If an alleged error is part of counsel's trial strategy, it does not establish ineffective assistance of counsel. State v. Esteen, 02-1241 (La.App. 5 Cir. 4/29/03), 846 So.2d 167, 174, writ denied, 03-1486 (La.1/9/04), 862 So.2d 978.
Generally, a claim for ineffective assistance of counsel is most appropriately addressed through an application for post-conviction relief, which is filed in the trial court where a full evidentiary hearing can be conducted, rather than by direct appeal. State v. Taylor, 04-346 (La.App. 5 Cir.10/26/04), 887 So.2d 589, 595. However, an appellate court can address the issues if the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal. Id., State v. Peart, 621 So.2d at 787.
We believe that this Court can address the issue of ineffective assistance of counsel, because the record contains sufficient evidence to decide the issue, and the issue is properly raised by assignment of error on appeal. The record shows that defense counsel objected to the trial court's denial of the defendant's motion to suppress the identification. At trial, defense counsel rigorously questioned the victim about her identification of the defendant and the procedures used in that identification. Defense counsel's tactics in cross-examining the victim, at the suppression hearing and trial, falls within the ambit of trial strategy, and does not establish ineffective assistance of counsel. In addition, defense counsel was not ineffective for not to objecting to the State's failure to disclose co-defendant Norman's prior statement, because the transcript of co-defendant Norman's police statement was introduced into evidence by the State at the December 5, 2002 suppression hearing. Defense counsel did not object to its introduction, and used the statement, at trial, to impeach Norman. The defense counsel decision not to object to the admission of Norman's statement, at the suppression hearing, in order to use it to impeach him, at trial, is a tactic falling within the ambit of trial strategy, and does not establish ineffective assistance of counsel. Finally, even if the defendant could show that his counsel's conduct prejudiced him, it would not have affected the outcome of the trial, because of the overwhelming evidence against the defendant. The victim consistently identified the defendant as the assailant who robbed her at gunpoint. Co-defendant Norman testified that the defendant got out of the car, approached the female, and later told him that he robbed the female of some earrings. The third passenger in the car, on date of the robbery, Robert Gash testified, under court order, that he knew the defendant, and that the defendant was a passenger in a blue Escort. Accordingly, we find no merit to defendant's claim of ineffective assistance of counsel.
*812 We have reviewed the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) and find the following error which warrants our consideration.
Despite notation in the minute entry, the sentencing transcript in this case indicates that the trial judge did not completely inform the defendant of the appropriate period for filing an application for post-conviction relief. LSA-C.Cr.P. art. 930.8(A) states that a defendant has two years after the judgment of conviction and sentence has become final to file for post-conviction relief. It is well settled that when the transcript and a minute entry conflict, it is the transcript that prevails. State v. Lynch, 441 So.2d 732, 734 (La. 1983). See, State v. Wilkinson, 00-339 (La.App. 5 Cir.10/18/00), 772 So.2d 758, 771, writ denied, 00-3161 (La. 10/12/01), 799 So.2d 494. Therefore, we remand this case and order the trial court to inform the defendant of the correct prescriptive period for filing for post-conviction relief by sending appropriate written notice to the defendant after the rendition of this Court's opinion and filing written proof that the defendant received the notice in the record. State v. Hutchinson, 02-60 (La.App. 5 Cir. 5/15/02), 817 So.2d 500, 509.
For the above discussed reasons, we affirm the defendant's conviction and sentence. We remand the case to the district court with instructions for the trial court to correctly inform the defendant of the prescriptive provisions for seeking post-conviction relief.
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED.