901 So.2d 527 (2005)
STATE of Louisiana
v.
Vernon WILLIAMS.
No. 04-KA-1016.
Court of Appeal of Louisiana, Fifth Circuit.
March 29, 2005.
*528 Paul D. Connick, Jr., District Attorney, 24th Judicial District Parish of Jefferson, State of Louisiana, Terry M. Boudreaux, Andrea F. Long (Appellate Counsel), Martin A. Belanger, Jr., Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee, The State of Louisiana.
James A. Williams, Butch Wilson, Law Office of James A. Williams, Gretna, LA, for Defendant/Appellant, Vernon Williams.
Vernon Williams, Pine Prairie, LA, Defendant/Appellant, Appearing pro se.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY, and CLARENCE E. McMANUS.
SUSAN M. CHEHARDY, Judge.
Vernon Williams appeals his conviction by a jury of violation of La.R.S. 40:981.3, distribution of cocaine within one thousand feet of a church. We affirm.

FACTS
Lionel Womack, a former undercover agent for the Narcotics Division of the Jefferson Parish Sheriff's Office (JPSO), testified at trial that on February 6, 2003, at approximately 4:26 p.m., he was working undercover as part of a narcotics team in Bunche Village in Jefferson Parish. He was driving on Mistletoe Street when he saw an individual, whom he later identified as the defendant, wearing a hooded orange sweatshirt and black pants.[1] Womack asked the defendant if he knew where he (Womack) could buy a "twenty." The defendant responded affirmatively and got onto the back of Womack's truck, which had been outfitted with video and audio equipment to record drug transactions and to protect the undercover agent.
Womack proceeded onto Wilson Street and, at a point "about halfway from Mistletoe," the defendant told Womack to stop and Womack complied. Womack noted there was a church on his left. The defendant exited the vehicle and approached another black male, who was wearing a green shirt and black pants. The other black male took a piece of crack cocaine out of his mouth and gave it to the defendant, who then brought it to Womack. The defendant gave Womack the crack cocaine, and Womack gave the defendant a twenty-dollar bill. Womack then drove away.
Agent Womack testified that approximately an hour after the transaction, he turned the drugs over to Agent Corey *529 Wilson. Wilson field-tested the cocaine rock in Womack's presence, and Womack observed that it tested positive for the presence of cocaine.
Womack testified that the transaction occurred one hundred twenty-six feet from a church, and that the church had a "Drug Free Zone" sign posted next to it. The jury was shown an aerial photograph of the area, on which Womack pointed out the location of the church and the drug transaction, as well as the places in the surrounding area where "Drug Free Zone" signs were posted.
Womack testified further that approximately two weeks later he identified the defendant in a photographic lineup that Agent Wilson had compiled. Womack also identified the defendant in court as the same person. On cross examination, he stated he was sure the twenty-dollar bill the State entered in evidence was the same bill he gave the defendant during the transaction, although he admitted he had no idea who had retrieved the bill. He stated he was not involved in the arrest process, but only in making undercover drug buys.
The transaction had been videotaped; at trial the State played the videotape for the jury.
Agent Corey Wilson also testified at trial. He described the JPSO's procedures for undercover buys. On the day of the transaction in this case, he was working a semi-undercover role as part of the narcotics team in Bunch Village. As such, after the undercover agent was in the area, Wilson would drive around the area and try to follow the undercover agent to protect him if necessary. Wilson's testimony corroborated Womack's as to the facts of the transaction and the identification of the defendant.
Wilson also stated that he measured the distance from the transaction site to the nearby church and determined it was a hundred and twenty-six feet. He further testified that the other officers of the team waited until later before arresting the defendant, in order to protect the undercover officers.
The State and the defense stipulated that the substance offered in evidence by the State was crack cocaine. They also stipulated that, if Agents Wilkie and Dufrene were called as witnesses, they would testify that they stopped the defendant, spoke to him, obtained identifying information from him, but that they did not retrieve the twenty dollars from him.
The defense did not call any witnesses.
On appeal, the defendant is represented by counsel, but he has also filed a pro se brief. We will address his counsel's Assignment of Error No. 1 first, then discuss the pro se assignments.

ASSIGNMENT OF ERROR NUMBER ONE
In this assignment, raised in the brief filed on defendant's behalf by his appointed counsel, the defendant challenges the sufficiency of the evidence. He argues that the issue of identity was not sufficiently proven to warrant a conviction.
The defendant contends (1) the testimony of the main identification witness, Lionel Womack, was contradictory, unreliable and "in conflict with physical evidence"; (2) the suspect's face could not be clearly seen on the videotape due to its poor quality, and to the extent Womack relied upon the videotape to make his photographic lineup identification, it was wholly unreliable; (3) Womack's testimony was unreliable because he could not remember how many lineups he viewed before identifying the defendant, because he viewed the lineup two weeks after the transaction, and *530 because he could not recall how long he looked at the suspect during the transaction; (4) Womack was confused regarding his description of the defendant's lips, the physical feature upon which he based his identification; (5) Womack lacked professional training for the job he was assigned to; and (6) no currency was found on the defendant.
The State responds that after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the State established beyond a reasonable doubt that the defendant was the perpetrator of the charged offense.
The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-319, 99 S.Ct. 2781, 2788-2789, 61 L.Ed.2d 560 (1979).
Here, the defendant was convicted of distribution of cocaine within one thousand feet of a church, a violation of La.R.S. 40:981.3. In pertinent part the statute provides:
Any person who violates a felony provision of R.S. 40:966 through R.S. 40:970 of the Uniform Controlled Dangerous Substances Law while on any religious building property, public housing authority property, or within one thousand feet of any such property, if the area is posted as a drug-free zone, shall, upon conviction, be punished in accordance with Subsection E of this Section.
Encompassed in proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. When the key issue in the case is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Billard, 03-319 (La. App. 5 Cir. 7/29/03), 852 So.2d 1069, 1072, writ denied, 03-2437 (La.2/6/04), 865 So.2d 739.
In the instant case, the defendant does not contend that the State failed to establish the elements of the crime. Rather, he alleges that there was insufficient evidence to conclude that he was the perpetrator.
To establish the element of identity, the State produced the testimony of Agents Womack and Wilson. Womack testified that, approximately two weeks after the incident, he met with Wilson at the bureau where he positively identified the defendant in a photographic lineup. Womack also positively identified the defendant in court.
Womack explained that he had the opportunity to observe the defendant's features in his rear view mirror while they were traveling to their destination and the feature that stood out the most were his full lips. He testified that he was one hundred percent sure that the defendant was the individual he purchased cocaine from, that he had no doubt at all, and that he was convinced the defendant was the perpetrator. Womack asserted that, when he was shown the photographic lineup, he picked out the defendant immediately and without hesitation, and that the officer did not suggest to him which one might be the perpetrator.
Womack further testified that he was looking at the defendant because "violence and crime go together," and that he was afraid for his life, so he needed to ensure he could identify the defendant in court in the event the case went to trial. He explained that he was sure the defendant was the perpetrator, because his job was very dangerous and, as such, he learned to *531 notice and learn people's faces. In addition, he stated, there was no one else in the area wearing a hooded orange sweatshirt and black pants.
Wilson testified that he set up surveillance within the Bunche Village area around Mistletoe Street on the day in question, that he drove around that area in an unmarked vehicle, and that he was approximately one block away from Womack at all times. As he was driving around, he observed Womack pull over. He then observed a black male wearing a hooded orange sweatshirt and black pants run over and get into the rear of Womack's vehicle.
Wilson explained that he turned onto another street to avoid detection, but that he could still hear what was going on over the transmitter. Womack advised over the air that he had a "done deal," which meant that he had just purchased narcotics, that everything was okay, and that he was on his way out of the area. Womack also provided a clothing description of the subject that was the same clothing Wilson had observed previously.
Wilson testified that he continued surveillance of the area and that less than one minute after the transaction, he observed an individual wearing a hooded orange sweatshirt and black pants standing at Wilson and Mistletoe Streets, the same individual he had seen earlier. When the defendant started walking toward Airline Drive, Wilson was concerned he would escape. Therefore, Wilson contacted two other agents, Wilkie and Dufrene, who moved in, stopped the defendant, and got identifying information from him.
Wilson testified that the first time he saw the defendant getting into Womack's vehicle, he did not see his face because he was too far away. However, Wilson stated, when he saw the defendant the second time standing on the corner, he knew it was the same person he had seen the first time because of the clothing, the skin tone, and the features. Wilson explained that the defendant had a dark complexion and full lips.
Wilson positively identified the defendant in court. He also testified that Womack immediately identified the defendant in the photographic lineup as the same subject from whom he purchased cocaine on February 6, 2003.
Further, the jury viewed the videotape recording of the incident. Thus, the jurors were able to compare the image of the perpetrator on the videotape to the defendant and to corroborate for themselves the testimony of both Womack and Wilson.[2] Although Womack viewed the videotape prior to identifying the defendant in the photographic lineup, Wilson explained that that was normal procedure, and that Womack was only shown the videotape to remind him of that day and not to assist him in making an identification.
After considering the credibility of the witnesses and weighing the evidence, the jury accepted the testimony of the State's witnesses and their identifications of the defendant as the perpetrator.
As the trier of fact, the jury was free to accept or reject, in whole or in part, *532 the testimony of any witness. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 35. Any conflicting testimony as to factual matters, the resolution of which depends on a determination of the credibility of the witnesses, goes to the weight of the evidence, and not its sufficiency. State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, and 00-150 (La.6/30/00), 765 So.2d 1066.
It is not the function of an appellate court to assess credibility or re-weigh the evidence. State v. Helou, 02-2302 (La.10/23/03), 857 So.2d 1024, 1027.
Based on the foregoing, we conclude that the evidence was sufficient for the jury to find that the State met its burden of proving the essential elements of the crime, including the perpetrator's identity, beyond a reasonable doubt.[3]

PRO SE ASSIGNMENTS
In the defendant's pro se brief he makes the following assignments of error:
1. Was the evidence sufficient enough to represent a conviction, did the trial judge error [sic] by allowing the prosecution to discuss material that was not discoverable. [sic]
2. Identification was insufficient to support conviction for Distribution of Cocaine.
With respect to the first assignment, the defendant argues that testimony regarding prerecorded money should not have been admitted into evidence at trial because that money was never recovered from him or from anyone else, leaving the defense unsure whether a purchase of drugs with prerecorded money had ever taken place. The defendant contends the discussion of the money should have been inadmissible evidence because "the status of the money was not discoverable." The defendant claims he was not able to inspect or examine the money, which denied him due process guaranteed by the Fifth and Fourteenth Amendments and the right of confrontation guaranteed by the Sixth Amendment.
However, there were no objections made at trial when the testimony pertaining to prerecorded money was admitted or when the copy of the money itself was admitted. In fact, during the cross-examination of Agent Lionel Womack defense counsel himself elicited testimony pertaining to the money. When the agents testified at trial regarding the use of prerecorded money, they were simply providing evidence concerning the transaction. The State did not allege that prerecorded money was found. In addition, as stated above, the State and the defense stipulated that when the police stopped the defendant, they did not retrieve the twenty-dollar bill from him.
As for defendant's second assignment, the defendant's appellate counsel has already raised the sufficiency of the evidence as it relates to identity. That issue is discussed in this opinion, above, and we find no merit to the assignment.

ASSIGNMENT OF ERROR NUMBER TWO
The defendant's second assignment is patent error.[4] Although the defendant points out no patent errors, the State in its appellee brief asserts that the sentence is illegally lenient.
*533 The trial court sentenced the defendant to imprisonment at hard labor for twenty-two years, two of those years without benefit of probation, parole, or suspension of sentence. On the same day, the State filed a habitual offender bill alleging the defendant to be a second felony offender. The defendant ultimately stipulated to the habitual offender bill. The trial court vacated the original sentence and sentenced the defendant to imprisonment at hard labor for twenty-two years and six months, without benefit of probation or suspension of sentence. The trial court also ordered the sentence to run concurrently with any other sentence.
La.R.S. 40:981.3(E) provides, "Whoever violates a provision of this Section shall be punished by the imposition of the maximum fine and be imprisoned for not more than one and one-half times the longest term of imprisonment authorized by the applicable provisions of R.S. 40:966 through 970."
As the State points out, La.R.S. 40:967(B)(4)(b) provides for imposition of a fine and also requires that the first two years of the sentence shall be without benefit of parole, as well as without benefit of probation or suspension of sentence.
The trial court failed to impose a fine and failed to deny parole eligibility for a portion of the defendant's enhanced sentence.[5]
With respect to the fine, the Louisiana Supreme Court has held that La.R.S. 15:529.1 does not authorize imposition of a fine, but only provides for enhanced sentences relating to the term of imprisonment. State v. Dickerson, 584 So.2d 1140 (La.1991); State v. Dixon, 584 So.2d 668 (La.1991). In Dixon and Dickerson, the supreme court concluded that a trial judge is without authority to impose a fine on resentencing under La.R.S. 15:529.1. Thus, the enhanced habitual offender sentence in this case is not illegally lenient as to imposition of a fine.
Further, although the sentence is illegally lenient as to the trial court's failure to include parole among the benefits withheld during the first two years, that provision is self-activating under La.R.S. 15:301.1(C) and we need not order correction. State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, 799.
For the foregoing reasons, the conviction is affirmed.
AFFIRMED.
NOTES
[1] Womack later explained that "Lionel Womack" was not his real name and that he used that name for his protection.
[2] The videotape shows Womack asking a black male wearing a hooded orange sweat-shirt and dark pants if he knows where he can get a "twenty." The black male gets into the rear of Womack's vehicle. Womack drives a short distance, and the black male tells Womack to stop. The black male then walks up to the driver's side window, exchanges something with Womack, and walks off. Although the black male's face can only be seen briefly, the full lips mentioned by both Womack and Wilson as a distinctive feature are noticeable. (State's Exhibit 8).
[3] The issue raised by defense counsel as to the fact that there was no testimony that any currency was recovered from the defendant is covered by our discussion of money in addressing the defendant's pro se brief.
[4] See La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
[5] We note that our discussion of the enhanced sentence is based on the minute entry of the habitual offender proceeding. The defendant has not raised any issues regarding the habitual offender proceeding and there is no transcript of the hearing in the habitual offender proceeding in the appellate record.