WALTER J. ROTHSCHILD, Judge.
 

 | .¡Defendant, Earl Horton, was charged by bill of information with one count of aggravated flight from an officer in violation of LSA-R.S. 14:108.1 (count one), three counts of felon in possession of a firearm in violation of LSA-R.S. 14:95.1 (counts two, four, and five), one count of possession of stolen property, a Cadillac valued over $500, in violation of LSA-R.S. 14:69 (count three), and two counts of possession of a stolen firearm in violation of LSA-R.S. 14:69.1 (counts six and seven). Defendant proceeded to trial on August 5, 2008. After a two-day trial, a jury found
 
 *373
 
 him guilty as charged on all seven counts. The trial court sentenced defendant to two years at hard labor on count one, aggravated flight from an officer; ten years at hard labor on count two, felon in possession of a firearm; ten years at hard labor on count three, possession of stolen property; ten years on each count for counts four and five, felon in possession of a firearm; and five years on |4each count for counts six and seven, illegal possession of a stolen firearm. The trial court ordered the three counts of felon in possession of a firearm to be served without the benefit of parole, probation or suspension of sentence. It also ordered all the sentences to run concurrently with each other.
 

 The State subsequently filed a multiple offender bill of information against defendant. However, the multiple offender proceedings are the subject of another appeal,
 
 State v. Earl Horton,
 
 # 09-KA-251, 2009 WL 3447857, 28 So.3d 381.
 
 [1]
 

 FACTS
 

 At approximately 3:15 a.m. on June 1, 2007, Sergeant Joseph Ragas was on patrol when he observed an SUV and a Cadillac following each other at a high rate of speed on Gretna Blvd. He explained that the section of Gretna Blvd. on which the vehicles were traveling had become a corridor to a drug infested area of the Scottsdale subdivision. Sgt. Ragas followed the cars as they turned into the Scottsdale subdivision and saw both cars run a stop sign. He was behind the second vehicle, which was the Cadillac, and activated his lights and siren to initiate a traffic stop. The driver of the Cadillac refused to stop and sped off. Sgt. Ragas followed the Cadillac through the neighborhood at speeds of 40-45 mph until the Cadillac eventually crashed into a light pole on Otis St. During the chase, Sgt. Ragas confirmed that the Cadillac was a stolen vehicle.
 

 The driver, who was the sole occupant, exited the vehicle, grabbed at his waistband, and turned to run, at which time a handgun dropped to the ground. The driver, later identified as defendant, then ran into the backyard of a nearby residence and climbed over the fence into the adjacent parking lot of Mothe’s |r,Funeral Home. Sgt. Ragas pursued defendant as he went over the fence into the parking lot of the funeral home. As Sgt. Ragas came over the fence, he saw defendant running in the parking lot along the fence line toward a State building on the Westbank Expressway. He also saw two other deputies in the parking lot of the funeral home who were close to defendant and who he thought were about to catch defendant, so he returned to secure the Cadillac. He observed a second weapon on the floorboard of the passenger side and advised over the radio that defendant was armed. He then instructed officers to set up a perimeter around the State building, which was fenced in.
 

 Meanwhile, Deputy Carl Cade, one of the two deputies in the funeral home’s parking lot, saw defendant running through the funeral home parking lot and watched him climb over the chain link fence and enter the parking lot of the State building. He saw defendant jog to
 
 *374
 
 ward the back of the State building and disappear between some FEMA trailers.
 

 As the perimeter was set up, Deputy Curtis Roy responded to the scene with his K-9, Taaka. He went through the State building, which was unlocked by a cleaning crew that was cleaning the building, into the fenced-in back parking lot area and released Taaka on a 30 ft. lead. Taaka alerted to the FEMA trailers. Deputy Roy gave a warning but there was no response. Deputy Roy then saw defendant make a break for the back fence that ran along the residences. He released Taaka, who seized defendant by biting him on the arm. Defendant proceeded to punch the dog until he was knocked to the ground and handcuffed. Deputy Roy explained that defendant had been hiding underneath the insulation under one of the trailers.
 

 Later the same day, an Otis St. resident, Angelo Deleo, discovered a revolver in his backyard, which was behind the State building. It was determined |fithat the revolver had been previously stolen. Additionally, it was discovered that the handgun discarded by defendant outside the Cadillac had been stolen from an NOPD Lieutenant’s car in April 2007.
 

 LAW AND DISCUSSION
 

 In his first counseled assignment of error, defendant argues that the evidence was insufficient to support the verdict, because the State failed to prove his identity as the perpetrator of the charged offenses. He contends there was no physical evidence linking him to the Cadillac or to any of the firearms allegedly discarded by him or found in the car. He further maintains that there was an irreconcilable conflict between the description of the suspect and his appearance, because he did not match the description given by Sgt. Ragas to dispatch. Thus, defendant argues that the State did not exclude the reasonable hypothesis that he was innocently ensnared in a trap set for another.
 

 The State responds that the evidence sufficiently proved defendant’s identity as the perpetrator, because it showed that the police maintained an almost constant view of defendant from the time of the traffic violation until he entered the secured perimeter. The State contends there were no other subjects in the area at the early hour of 3:30 a.m., defendant was the only one being pursued, and he was found hiding in the secured area. Additionally, the State asserts that defendant’s name and address were found on a piece of paper on the floor of the stolen vehicle.
 

 The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A reviewing court is required to consider the whole record and determine whether a rational trier of fact Lcould have found defendant guilty beyond a reasonable doubt.
 
 State v. Price,
 
 00-1883 (La.App. 5 Cir. 7/30/01), 792 So.2d 180, 184.
 

 In addition to proving the statutory elements of the charged offense at trial, the State is required to prove defendant’s identity as the perpetrator.
 
 State v. Ingram,
 
 04-551, p. 6 (La.App. 5 Cir. 10/26/04), 888 So.2d 923, 926. When the key issue is identification, the State is required to negate any reasonable probabili ty of misidentification in order to carry its burden of proof.
 
 Id.
 
 Positive identification by only one witness is sufficient to support a conviction.
 
 State v. Weaver,
 
 05-169, p. 11 (La.App. 5 Cir. 11/29/05), 917 So.2d 600,
 
 *375
 
 608,
 
 writ denied,
 
 06-695 (La.12/15/06), 944 So.2d 1277.
 

 Defendant does not argue that the State failed to establish any of the essential statutory elements of his convictions but rather contends that the State failed to prove beyond a reasonable doubt his identity as the offender. To prove identity, the State offered the testimony of several witnesses. Sgt. Ragas testified that he saw defendant exit the driver’s side of the Cadillac, drop a handgun, and run into the backyard of a residence. Sgt. Ragas followed defendant and saw him climb over the fence into the parking lot of Mothe’s Funeral Home. He climbed the fence and saw defendant run toward the State building. Sgt. Ragas identified defendant in court and explained that he and defendant were in close proximity when defendant exited the car and he was sure defendant was the person he saw exit the car.
 

 Deputy James Carrigan testified that he responded to the parking area of the funeral home after hearing the dispatch of the vehicle chase, crash, and flight of defendant. He stated Sgt. Ragas had just indicated defendant was “getting ready to go over the back fence” when he saw defendant come across the fence. According lato Deputy Carrigan, defendant saw the officers and ran straight to the State building and jumped the fence.
 

 Deputy Carl Cade also testified that he responded to the funeral home parking lot shortly after the call came out. When he arrived, he saw defendant running through the parking lot and saw him climb over the chain-link fence, which had barbed wire on top, into the State building parking lot. Deputy Cade stated he watched defendant jog toward the back of the State building and disappear between trailers that were on the property. Deputy Cade identified defendant in court as the person he saw climb over the fence into the State building parking lot.
 

 Shortly thereafter, defendant was apprehended in the back portion of the State building parking lot near the trailers. According to the dispatch log, the initial call came in at 3:16 a.m. At 3:18 a.m., it was reported that defendant was last seen jumping the fence by the funeral home. The K-9 unit arrived at the State building at 3:22 a.m. and alerted to defendant’s presence at 3:32 a.m. in the area of the trailers, where defendant was last seen.
 

 Defendant contends that there was an irreconcilable conflict between Sgt. Ragas’s description of the subject to dispatch and defendant’s appearance. Sgt. Ragas described the subject to dispatch as having
 
 “a
 
 lot of hair, like long braids.” He also described the subject’s clothing as a black shirt and dark jeans. When defendant was arrested, he had a closely shaved head and was wearing a black shirt, which was torn or shredded, and jeans. The torn or shredded shirt was consistent with testimony indicating that he was seen climbing over a barbed wire fence into the parking lot of the State building. When asked to explain the discrepancy between the description of the suspect’s hair style and defendant’s hair at the time of his arrest, Sgt. Ragas stated that he was obviously wrong when | ¡¡describing the suspect’s hair style. Sgt. Ragas pointed out that the first description he gave was that of the suspect’s clothing and that the hair style description was not given until later.
 

 As the trier of fact, the jury was free to accept or reject, in whole or in part, the testimony of any witness.
 
 State v. Williams,
 
 04-1016, p. 8 (La.App. 5 Cir. 3/29/05), 901 So.2d 527, 531-32,
 
 writ denied,
 
 05-1080 (La.12/9/05), 916 So.2d 1056. Any conflicting testimony as to factual matters, the resolution of which depends on a determination of the credibility of the
 
 *376
 
 witnesses, goes to the weight of the evidence and not its sufficiency.
 
 Id.
 
 at 8, 901 So.2d at 532. It is not the function of an appellate court to assess credibility or reweigh the evidence.
 
 Id.
 

 Despite the discrepancy between Sgt. Ragas’ description of the suspect’s hair style and defendant’s appearance, the jury apparently believed certain aspects of Sgt. Ragas’ testimony that linked defendant to the incident and rejected defendant’s theory of mistaken identity. Furthermore, defendant’s identity was established by several other witnesses. From the time defendant exited the vehicle, he was in almost constant view of the police until he disappeared in between the trailers in the parking lot behind the State building. Shortly thereafter, defendant was apprehended in the secured area after he was seen running from the trailer area to the back fence.
 

 Viewing the evidence in a light most favorable to the State, we find that the State negated all reasonable likelihood of misidentification and sufficiently proved defendant’s identity as the perpetrator of the offenses. Accordingly, this assignment of error is without merit.
 

 In his second counseled assignment of error, defendant asks this Court to review the record for all errors patent. This Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920;
 
 State v. Oliveaux,
 
 312 So.2d 337 (La.1975); and
 
 State v. Weiland,
 
 556 So.2d 175 (La.App. 5 Cir.1990), regardless of whether defendant makes such a request.
 

 As noted by the State in its appel-lee brief, the trial court failed to impose a mandatory fine for counts two, four, and five, felon in possession of a firearm, as required by LSA-R.S. 14:95.1, and thus, imposed an illegally lenient sentence on those counts. LSA-R.S. 14:95.1(B) requires a fine of “not less than one thousand dollars nor more than five thousand dollars.”
 

 This Court has the authority to correct an illegally lenient sentence. LSA-C.Cr.P. art. 882. However, this authority is permissive rather than mandatory. Recently, in
 
 State v. Campbell,
 
 08-1226, (La.App. 5 Cir. 5/26/09), 15 So.3d 1076, this Court noted defendant’s indigent status and declined to correct an illegally lenient sentence where the district court failed to impose a mandatory fine. In the present case, it is noted that defendant is indigent, since he is represented by the Louisiana Appellate Project, which provides appellate services for indigent criminal defendants in non-capital felony cases. Due to defendant’s indigent status, we decline to remand this matter for imposition of the mandatory fine.
 

 It is also noted that at sentencing, the trial court failed to indicate whether or not the sentences on counts four and five, felon in possession of a firearm, and counts six and seven, illegal possession of a stolen firearm, were to be served at hard labor. The commitment reflects the term of each sentence, but it does not indicate that any of the sentences on counts four through seven were to be served at hard labor. In a separate paragraph, the commitment states that defendant was sentenced to imprisonment at hard labor for a term of 10 years. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails.
 
 State v. Lynch,
 
 441 So.2d 732, 734 (La.1983).
 

 InLSA-C.Cr.P. art. 879 requires a court to impose a determinate sentence. If the applicable sentencing statute allows discretion, the failure to indicate whether the sentence is to be served at “hard labor” is an impermissible indeterminate
 
 *377
 
 sentence.
 
 State v. Norman,
 
 05-794, p. 8 (La.App. 5 Cir. 3/14/06), 926 So.2d 657, 661,
 
 writ denied,
 
 06-1366 (La.1/12/07), 948 So.2d 145.
 

 Defendant was sentenced on counts four and five, felon in possession of a firearm, pursuant to LSA-R.S. 14:95.1(B), which mandates the sentence be at hard labor. Because the statute mandates hard labor and there is no discretion allowed, the trial judge’s failure to state that these sentences were to be at hard labor is harmless error and no corrective action is required for counts four and five.
 

 Conversely, LSA-R.S. 14:69.1, under which defendant was sentenced for counts six and seven, allows discretion on the part of the trial judge and states the sentence shall be served with or without hard labor. Thus, the trial court’s failure to specify whether defendant’s sentences on counts six and seven were to be served with or without hard labor renders them indeterminate sentences. As such, we must vacate defendant’s sentences on counts six and seven and remand the matter to the trial court for the imposition of determinate sentences in accordance with LSA-C.Cr.P. art. 879.
 

 No other patent errors requiring corrective action were noted.
 

 In defendant’s first
 
 pro se
 
 assignment of error, he argues that he received ineffective assistance of counsel because his trial counsel (1) allowed the State to use
 
 Brady
 
 material that was subsequently destroyed, (2) allowed two officers to testify even though they were not on the State’s witness list, (3) failed to impeach officers at trial with contradicting statements, (4) allowed the State to put officers on the stand outside discovery, and (5) failed to support his pro se motions for production of the police manual and for expert funds. The State responds that | l2these claims should be deferred to post-conviction relief proceedings because defendant references several documents that are not part of the record and, thus, cannot be considered in support of his claim on appeal.
 

 Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be conducted.
 
 State v. Taylor,
 
 04-346, p. 10 (La.App. 5 Cir. 10/26/04), 887 So.2d 589, 595. When the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised by an assignment of error on appeal, it may be addressed in the interest of judicial economy.
 
 Id.
 
 Where the record does not contain sufficient evidence to fully explore a claim of ineffective assistance of counsel, the claim should be relegated to post-conviction proceedings under LSA-C.Cr.P. arts. 924-930.8.
 

 In the present ease, the record does not contain sufficient evidence to address all of defendant’s claims of ineffective assistance of counsel. One of defendant’s claims for ineffective assistance of counsel relates to witnesses outside the State’s witness list. Although defendant attaches the State’s witness list to his
 
 pro se
 
 appellant brief, the witness list is not included in the appellate record. It is well-settled that an appellate court is precluded from considering evidence which is not part of the record.
 
 State v. Smith,
 
 03-786, pp. 15-16 (La.App. 5 Cir. 12/30/03), 864 So.2d 811, 823,
 
 writs denied,
 
 04-380 and 04-419 (La.6/25/04), 876 So.2d 830.
 

 When the record contains insufficient evidence to consider all of the allegations of ineffectiveness of counsel, this Court has declined to address any of the claims stating that the entirety of the claims are
 
 *378
 
 more properly addressed on post-conviction relief at an evidentiary hearing.
 
 State v. Allen,
 
 06-778, pp. 11-12 (La.App. 5 Cir. 4/24/07), 955 So.2d 742, 752,
 
 writ denied,
 
 08-2432 (La.1/30/09), 999 So.2d 754. Thus, in the present case, we will not address defendant’s claims | ,3of ineffective assistance of counsel in this appeal, because they would be more properly addressed in their entirety by the trial court on post-conviction relief at an evidentiary hearing.
 

 In his second
 
 pro se
 
 assignment of error, defendant argues that he was denied the right to a fair trial because the State suppressed
 
 Brady
 
 evidence through its mishandling and ultimate destruction of exculpatory evidence. Specifically, defendant maintains he was denied the ability to test the evidence, namely the car and a letter found within the car, for DNA and fingerprint evidence, which would have led to the true perpetrator and exonerated him. The State contends that defendant has failed to show the State suppressed any exculpatory or impeachment evidence and, therefore,
 
 Brady
 
 is not implicated. The State further asserts the record does not show the alleged evidence was destroyed. The State notes that defendant fails to acknowledge he was seen exiting the car and that fingerprint analysis was unnecessary because defendant was apprehended at the scene.
 

 Due process requires that the State provide a defendant with any exculpatory evidence in its possession which is material to defendant’s guilt or punishment, regardless of the good faith or bad faith of the prosecutor.
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215 (1963). Where a defendant claims that his due process rights have been violated due to the State’s failure to preserve potentially useful evidence, the defendant has the burden of showing that the State acted in bad faith.
 
 Arizona v. Youngblood,
 
 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988). In
 
 California v. Trombetta,
 
 467 U.S. 479, 488-89, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413 (1984), the United States Supreme Court explained:
 

 Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect’s defense. To meet this | ^standard of constitutional materiality, ... evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.
 

 In
 
 State v. Schexnayder,
 
 96-98, p. 11 (La.App. 5 Cir. 11/26/96), 685 So.2d 357, 365,
 
 writ denied,
 
 97-67 (La.5/16/97), 693 So.2d 796,
 
 cert. denied,
 
 522 U.S. 839, 118 S.Ct. 115, 139 L.Ed.2d 67 (1997), defendant claimed that the State destroyed his car, which deprived him access to important exculpatory evidence. At trial, the officers testified that an inventory search of the car was conducted and no evidence was seized from the car and no photographs were taken. The car was later destroyed. Defendant argued that he was deprived of the opportunity to impeach State witnesses without the car or photographs of the car as evidence. This Court determined that defendant did not offer sufficient proof that the State acted in bad faith in destroying the car. Specifically, this Court explained that defendant failed to show that the car had exculpatory value that was apparent prior to its destruction.
 
 Id.
 
 at 11-13, 685 So.2d at 365-66.
 

 Also, in
 
 State v. Harris,
 
 01-2730, p. 21 (La.1/19/05), 892 So.2d 1238, 1253, n. 31,
 
 cert. denied,
 
 546 U.S. 848, 126 S.Ct. 102, 163 L.Ed.2d 116 (2005), the Louisiana Su
 
 *379
 
 preme Court found no merit in defendant’s argument that his due process rights were violated when DNA evidence was destroyed and he was prevented from testing it. The Court noted that defendant did not allege bad faith by the State in the evidence’s destruction and that the destruction of the DNA samples “allowed defense counsel to criticize the police’s investigation of the crime and cast doubt on the police’s handling of the entire case.”
 

 In the present case, defendant seems to suggest that if he had access to the car, he could have had it tested for fingerprints. He also suggests that a letter found in the car had blood smeared on it and if he had access to the letter, he could | lfihave had it analyzed for DNA evidence. However, defendant does not allege bad faith on the part of the State in the alleged destruction of evidence. Furthermore, defendant fails to show that the car or the letter had apparent exculpatory value. Considering the facts along with the applicable law, we find that defendant has not shown that his due process rights were violated or that he was denied the right to a fair trial. This assignment of error is without merit.
 

 In his third
 
 pro se
 
 assignment of error, defendant argues that he was denied the right to compulsory process to obtain expert witnesses because of the loss or destruction of potentially exculpatory evidence by the State. He asserts the lost or destroyed evidence could have been analyzed by expei'ts who could have testified for the defense.
 

 A criminal defendant is constitutionally guaranteed the right to compulsory process and to present a defense. United States Constitution, Sixth Amendment; Louisiana Constitution, Article I, § 16. A defendant’s right to compulsory process is the right to demand subpoenas for witnesses and the right to have those subpoenas served.
 
 State v. Arabie,
 
 07-806, p. 8 (La.App. 5 Cir. 3/11/08), 982 So.2d 136, 141,
 
 unit denied,
 
 08-928 (La. 11/21/08), 996 So.2d 1104. A defendant’s inability to obtain service of a requested subpoena is not an automatic ground for reversal. He must show prejudicial error, demonstrating that the witness’ testimony would be favorable to the defense and the results of the trial would possibly be different if the witness were to testify.
 
 Id.
 

 Defendant essentially claims that but for the loss or destruction of evidence, he could have obtained expert witnesses to examine the evidence and to testify as to his innocence. However, defendant’s claim does not constitute the denial of his constitutional right to compulsory process. Defendant does not identify the witnesses he wished to call, the substance of their testimony, or indicate that he |j (¡requested subpoenas that were not served. Accordingly, this assignment of error is without merit.
 

 In defendant’s fourth
 
 pro se
 
 assignment of error, he contends that he was denied access to the courts when the trial court erred in proceeding to trial without hearing all of his motions, especially his
 
 pro se
 
 motion for the production of the police manual and for expert funds.
 

 As pointed out by the State in its appellee brief, a trial court is not required to entertain
 
 pro se
 
 motions when a defendant is represented by counsel and entertaining the motions will lead to confusion at trial.
 
 State v. Holmes,
 
 06-2988, p. 80 (La.12/2/08), 5 So.3d 42, 94. The Louisiana Supreme Court has explained that although an indigent defendant has a right to counsel as well as the opposite right to represent himself, he has no constitutional right to be both represented and representative.
 
 Id.
 
 at 80-81, 5 So.3d at 94. Furthermore, a defendant waives all pending motions, including
 
 pro se
 
 motions, by proceeding to trial without objecting to the
 
 *380
 
 lack of a ruling on the motions.
 
 See State v. Watson,
 
 08-214, pp. 10-11 (La.App. 5 Cir. 8/19/08), 993 So.2d 779, 786.
 

 The record shows that defendant filed numerous
 
 pro se
 
 pre-trial motions, some that were ruled upon prior to trial and some that were not. Defendant proceeded to trial without objecting to the trial court’s failure to rule on his
 
 pro se
 
 pretrial motions. Thus, defendant waived all pending pre-trial motions for purposes of appellate review. Considering the applicable law on this issue, this assignment of error is without merit.
 

 In his fifth
 
 pro se
 
 assignment of error, defendant contends that his due process rights were violated, because the State used perjured testimony. He specifically maintains that the police testified falsely and points to discrepancies in the testimony of the officers. The State responds that defendant failed to object to 117the testimony as perjured and, thus, waived any error on appeal. The State nonetheless maintains that the discrepancies appear attributable to the lack of specific recall of each officer, rather than perjury, and contends that the inconsistencies in the testimony were immaterial.
 

 In
 
 State v. Singleton,
 
 05-634, p. 9-10 (La.App. 5 Cir. 2/14/06), 923 So.2d 803, 809-10,
 
 writ denied,
 
 06-1208 (La.11/17/06), 942 So.2d 532, this Court determined that the defendant waived his right to assert his claim on appeal that the State presented perjured testimony, because he did not object to the testimony as perjury at trial. Likewise, in
 
 State v. Ayo,
 
 08-468, pp. 18-19 (La.App. 5 Cir. 3/24/09), 7 So.3d 85, 97-98, this Court found the defendant was precluded from raising the issue of perjured testimony on appeal because he failed to object to the testimony at trial, thereby denying the trial court an opportunity to rule on his perjury claim. In
 
 Ayo,
 
 the defendant relied on internal contradictions in the testimony to support his claim of perjury, and the Court noted that the defendant based his claims of perjury on the trial record rather than newly discovered external sources. Thus, the Court concluded that the substance of the claim and its factual underpinnings were known to the defendant at the time of trial and he failed to object to the testimony.
 

 In the present case, defendant failed to object to the officers’ testimony on the basis of perjury. He points to discrepancies in the record and does not base his perjury claim on newly discovered external sources. Thus, the claims were known to him at the time of trial and he did not object. As such, he is precluded from raising the issue of perjured testimony for the first time on appeal.
 
 [2]
 

 DECREE
 

 11sFor the foregoing reasons, we affirm defendant’s convictions and his sentences on counts one through five. We vacate defendant’s sentences on counts six and seven and remand this case to the trial court for the imposition of determinate sentences on counts six and seven.
 

 CONVICTIONS AFFIRMED; SENTENCES ON COUNTS SIX AND SEVEN 'VACATED; REMANDED FOR RE-SENTENCING.
 

 [1]
 

 . Defendant’s motion for appeal in the present appeal was premature when it was filed after his conviction and imposition of the original sentence but before the multiple offender adjudication and sentence. However, the defendant's subsequent resentencing after his multiple offender adjudication, as shown rn appeal record #09-KA-251, cured this procedural defect. See
 
 State v. Davis,
 
 07-544, p. 3 (La.App. 5 Cir. 12/27/07), 975 So.2d 60, 63, n. 1,
 
 writ denied,
 
 08-380 (La.9/19/08), 992 So.2d 952. Defendant also filed a subsequent motion for appeal after his multiple offender sentence was imposed.
 

 [2]
 

 . We note that defendant's perjury claim appears to be based on inconsistencies between the officers' testimony, which goes to the weight of the evidence and does not establish perjury. See
 
 State v. Jefferson,
 
 04-1960, pp. 30-32 (La.App. 4 Cir. 12/21/05), 922 So.2d 577, 599-600,
 
 writ denied,
 
 06-940 (La. 10/27/06), 939 So.2d 1276.